**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.**

ALEXANDER LOPATINE,                          )
PARK CAPITAL HOLDINGS, LLC,                  )
PARK CAPITAL VENTURES, LLC, and              )
HELLOBUILD, LLC,                             )
                                             )
                    Plaintiffs,              )    (State Court Case No. 2021-2638
v.                                           )    in the Circuit Court for the Eleventh
                                             )    Judicial Circuit, in and for Miami-
FINLINK, Inc., d/b/a MBANQ,                  )    Dade County, Florida)
                                             )
                    Defendant.               )
_____)

## NOTICE OF REMOVAL

Defendant, Finlink, Inc., d/b/a MBANQ ("Finlink" or "Defendant"), by and through its

undersigned counsel, Dubbin & Kravetz, LLP, hereby gives notice of removal of this action to the

United States District Court for the Southern District of Florida from the Circuit Court for the

Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, Case No. 2021-002638-CA-01.

Defendant removes this case without waiving, and with a full reservation of, all of its procedural

and substantive rights and defenses, including, without limitation, its objections to personal

jurisdiction in the State of Florida.  Defendant states the following in support of this Notice of

Removal:

1.      On February 2, 2021, Plaintiffs Alexander Lopatine, Park Capital Holdings, LLC,

Park Capital Ventures, LLC, and Hellobuild, LLC ("Plaintiffs") filed a five count complaint

against Defendant Finlink ("Plaintiffs' Complaint") in the Circuit Court for the Eleventh Judicial

1

Circuit in and for Miami-Dade County, Florida, case No. 2021-002638-CA-01 ("State Court Action").

2.      On February 10, 2021, a copy of Plaintiffs' Complaint and Summons were delivered to Defendant's registered agent, A Registered Agent, Inc., 8 The Green, Suite A, Dover DE 19901. February 10, 2021 was the first time Defendant had received a copy of Plaintiffs' Complaint. Pursuant to 28 U.S.C. §1446(a), the Summons and Complaint are attached hereto as Exhibit A. No other process, pleadings, or orders were served upon Finlink.

3.      Plaintiffs' Complaint states on page 1, paragraph 1, that it is "a civil action seeking over $2 million in damages." The Complaint alleges five counts for relief:   Count I, for breach of contract (letter of intent); Count II, breach of contract (promissory notes); Count III, promissory estoppel, Count IV, accounting; and Count V, Unjust Enrichment.

4.      Defendant denies liability as to all of Plaintiffs' claims, and reserves all procedural and substantive rights pertaining to the Plaintiffs' Complaint and the State Court Action, including but not limited to Defendant's objection to personal jurisdiction in Florida.

5.   No proceedings have occurred in the State Court Action.

6.   Under 28 U.S.C. §1332(a), federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

7.   Under 28 U.S.C. §§ 1441 and 1446, Congress has granted defendants the statutory right to remove a case from a state court to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a).

8.   Removal is proper in this case because Plaintiffs and Defendants are citizens of different states, and the Plaintiffs' Complaint asserts claims for damages (all of which Defendant denies) in excess of the sum of $75,000.

9.   Plaintiffs are all citizens of the State of Florida for purposes of 28 U.S.C. §1332(a). Plaintiff Lopatine is domiciled in Miami-Dade County, Florida.  Plaintiffs Park Capital Holdings, LLC and Park Capital Ventures, LLC are citizens of the State of Florida because their only member, Lopatine, is domiciled in Miami-Dade County, Florida.  Plaintiff Hellobuild, LLC is a citizen of the State of Florida because its two members, Jonatan Alava and Luciano Ibias, are domiciled in Miami-Dade County, Florida.

10.   Defendant Finlink, Inc. is a citizen of the States of Delaware and California for purposes of 28 U.S.C. §1332(a).   Finklink is incorporated in the State of Delaware and has its principal place of business in Sonoma County, California.

11.   This Notice of Removal is timely because it was filed within thirty (30) days after Finlink was served with Plaintiffs' Complaint in the State Court Action.  28 U.S.C. §1446(b).

12.   The Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, is located within this Federal District and Division.

13.   Promptly after filing this Notice of Removal, Defendant will file a copy of the Notice of Removal with the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, and serve a copy on all counsel of record.  28 U.S.C. §1446(a) and (b).

14.   Accordingly, removal of the State Court Action to this Court pursuant to 28 U.S.C. §§1441 and 1446 is proper because this Court has jurisdiction over the action pursuant to 28 U.S.C. §1332(a).

WHEREFORE, Defendant Finlink, Inc. removes the above-captioned civil action from the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida.

Dated:  March 12, 2021                    Respectfully submitted,

                                          DUBBIN & KRAVETZ, LLP
                                          Samuel J. Dubbin, P.A.
                                          Florida Bar No. 328189
                                          1200 Anastasia Avenue, Ste. 300
                                          Coral Gables, Florida 33134
                                          Office Phone: (305) 357-9004
                                          Cell Phone:  (305) 815-8060
                                          Email:  sdubbin@dubbinkravetz.com

                                          By:     /s/ Samuel J. Dubbin, P.A._____
                                                  Samuel J. Dubbin, P.A.


                                          *Counsel for Defendant Finlink, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2021, I served the foregoing Notice of Removal on Harold E. Patricoff, Esquire, Aleksey Shtivelman, Esquire, and Isabella Llano, Esquire, Shutts & Bowen, 200 South Biscayne Blvd., Suite 4100, Miami, Florida 33131, hpatricoff@shutts.com, ashtivelman@shutts.com; and illano@shutts.com.

                          By: /s/ Samuel J. Dubbin, P.A.
                                  Samuel J. Dubbin, P.A.

# EXHIBIT A

Filing # 120844075 E-Filed 02/04/2021 03:03:20 PM

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.  2021-002638-CA-01

ALEXANDER LOPATINE,
PARK CAPITAL HOLDINGS, LLC,
PARK CAPITAL VENTURES, LLC, and
HELLOBUILD, LLC,

    Plaintiffs,

v.

FINLINK, INC. d/b/a MBANQ,

       Defendant.
_____/

THE STATE OF FLORIDA:
To Each Sheriff of Said State:

      **YOU ARE HEREBY COMMANDED** to serve this Summons, together with a copy of the Complaint in this action on defendant:

**FINLINK, INC. d/b/a MBANQ**
**c/o A Registered Agent, Inc.**
**8 The Green, Suite A**
**Dover, DE 19901**
**302-288-0670**

      Each defendant is required to serve written defenses to the complaint or petition on Plaintiffs' attorney, to wit:

**Harold E. Patricoff, Esq.**
**Aleksey Shtivelman, Esq.**
**Shutts & Bowen LLP**
**200 S. Biscayne Blvd., Suite 4100**
**Miami, Florida 33131**
**Tel. (305) 358-6300**

within twenty (20) days **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in**

**his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this Summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

2/5/2021

DATED on this 4th day of February, 2021.

HARVEY RUVIN
CLERK OF COURTS

(COURT SEAL)                    By: _____ 310009
                               Deputy Clerk

# AMERICANS WITH DISABILITIES ACT OF 1990 ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA coordinator, Lawson E. Thomas Courthouse Center, 175 NE 1st Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ada@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

MIADOCS 21684620 1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO.

ALEXANDER LOPATINE,
PARK CAPITAL HOLDINGS, LLC,
PARK CAPITAL VENTURES, LLC, and
HELLOBUILD, LLC,

    Plaintiffs,

v.

FINLINK, INC. d/b/a MBANQ,

       Defendant.

_____/

## COMPLAINT

    Plaintiffs, ALEXANDER LOPATINE ("Lopatine"), PARK CAPITAL HOLDINGS, LLC,

("Holdings"), PARK CAPITAL VENTURES, LLC, ("Ventures") (collectively, Holdings and

Ventures are referred to as "Park Capital"), and HELLOBUILD, LLC ("HelloBuild")

(collectively, the "Plaintiffs"), by and through undersigned counsel sue Defendant, FINLINK,

INC. d/b/a MBANQ ("Defendant" or "Mbanq") and allege as follows:

## NATURE OF THE CASE

    1.    This is a civil action seeking over $2 million in damages arising out of Mbanq's

breach of several interconnected and interrelated agreements, including a Letter of Intent and two

promissory notes (collectively, the "Agreements"), between Plaintiffs and Mbanq, for the sale of

Agilityfour, Inc. a/k/a KMR, Inc. ("A4")—a company involved in the design, development, and

commercialization of mobile banking applications for banks and credit unions—to Mbanq.

Pursuant to the Agreements between Mbanq and Plaintiffs, Mbanq was required to pay Plaintiffs over $2 million for a 100% interest in A4. The parties structured the sale of A4 such that Mbanq would pay for part of the purchase by cash payments over time (as evidenced by the Promissory Notes), and partially by the transfer of stock together with an Option buyback-clause (the "Put Option") (as evidenced in the Letter of Intent).

2.      In accordance with the Agreements, Plaintiffs sold, and transferred their interest in, A4 to Mbanq, as set forth in the Stock Purchase Agreement (the "SPA"). Although Plaintiffs complied with their obligations under the Agreements and transferred their interest in A4 to Mbanq, Mbanq defaulted by repeatedly failing to make timely and complete payments under the Promissory Notes. Mbanq refused to cure its repeated defaults, and instead ceased making payments altogether and refused to honor the Put Option.

3.      In particular, beginning on April 4, 2019, Mbanq made payments (most of which were partial, incomplete, and untimely) to Lopatine and Park Capital. The payments ranged from $150.00 to $25,000.00, and were paid by Venmo, PayPal, and other means. However, after the last payment of $5,000.00 on August 20, 2020, Mbanq stopped making any payments. Despite repeated promises to cure its nonpayment and defaults under the Agreements, Mbanq has failed to pay the amounts due and outstanding, to Plaintiffs.

4.      Furthermore, as alleged below, Mbanq also breached the Put Option, which required Mbanq to purchase Ventures' Mbanq shares at the price of $6.90 per share for a total of $1,423,000.80. Although Ventures exercised its Put Option, Mbanq failed to purchase the shares at the agreed-upon price and to pay Ventures for those shares.

5.      In summary, although Plaintiffs transferred their interest in A4 to Mbanq, Mbanq has made only partial, incomplete payments, and has simply failed to pay as agreed under the

Agreements. As a result, Plaintiffs are owed over $2 million, together with all applicable interest, costs, attorney's fees, and other damages.

## THE PARTIES, JURISDICTION, AND VENUE

6.     Plaintiff, Lopatine, is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

7.     Plaintiff, Holdings, is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida.

8.     Plaintiff, Ventures, is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida.

9.     Plaintiff, HelloBuild, is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

10.     Defendant, Mbanq, is a Delaware corporation with its principal place of business in Sonoma County, California.

11.     This Court has jurisdiction over the claims in this Complaint under Fla. Stat. § 48.193(1), (6), and (7). This Court has general and specific jurisdiction over Mbanq as it has engaged in substantial, systematic, and not isolated activity in Florida. In addition, Mbanq directed its activities at the State of Florida, including by engaging in negotiations to purchase A4 in Florida and to Florida residents and communicating with Plaintiffs in Florida. Plaintiffs are Florida residents and Mbanq caused damage to Plaintiffs in Florida by failing to make payments which were due and payable in Florida. The representations made to Plaintiffs were received in Florida. Plaintiffs relied on the representations in Florida in making its decision to sell A4, and the damages from Mbanq's conduct were suffered in Florida.

3

12.     Venue is proper in this Court because a significant portion of the transactions and misconduct at issue in this case took place in or were directed at this County and Plaintiffs suffered damages in this County. The parties' relationship is centered in this County. Specifically, Mbanq engaged in negotiations to purchase A4 in Florida and communicated with Plaintiffs in Florida. Plaintiffs are Florida residents and Mbanq caused damage to Plaintiffs in Florida by failing to make payments which were due and payable in Florida. The representations made to Plaintiffs were received in Florida, Plaintiffs relied on the representations in Florida in making their decision to sell A4, and the damages from Mbanq's conduct were suffered in Florida. Plaintiffs' cause of action therefore accrued in this County.

## GENERAL ALLEGATIONS

### I.     Plaintiffs Agree to Sell A4 to Mbanq in Exchange for Stock, Capital, and a Put Option

13.     Mbanq is a Silicon Valley based financial technology company that provides digital banking technologies to banks on a Software as a Service ("SaaS") basis. In particular, Mbanq provides technologies that help banks adapt their platforms to maximize efficiency, keep costs down, and provide advanced user-friendly services to their customers.

14.     In order to expand its US presence, customer base, and acquire different types of software to better serve its clients, in November 2018, Vladimir Lounegov ("Lounegov"), Mbanq's Chief Executive Officer, had conversations with Lopatine, the Managing Member of Park Capital, an investment and advisory firm focused on the financial services and technology industry. Lounegov indicated to Lopatine that Mbanq was interested in purchasing A4 from the Plaintiffs in order to further expand Mbanq's United States presence and customer base.

15.     Collectively, the Plaintiffs owned 100% of A4. In particular, HelloBuild—a software development company that helped develop A4's software—and Lopatine, through Park Capital, owned 95.3% of the ownership interest in A4, a company that designs, develops, and

4

commercializes online banking applications for credit unions. Kai Ravnborg ("Ravnborg")—the legacy owner and previous Chief Executive Officer of A4—owned approximately 4.7% of the remaining interest in A4.

16.     On February 21, 2019, Mbanq and Holdings entered into a Letter of Intent (the "LOI"), which described the key terms of the deal wherein Lopatine, Park Capital, and Ravnborg agreed to sell their interest in A4 to Mbanq. A true and correct copy of the LOI is attached hereto as **Exhibit "A."**

17.     The LOI provided, among other things, that in addition to Mbanq's purchase of A4, Lopatine would be offered a position on the Mbanq advisory board to assist in developing plans and strategy for Mbanq, introduce Mbanq to industry experts, bankers, and potential investors, identify key personnel and experts[1], and provide any other services that Mbanq may need. In exchange for Lopatine's position on Mbanq's advisory board, Mbanq would issue 20,000 shares of Mbanq's common stock, representing 0.20% of Mbanq's shares, to Lopatine, with a Put Option to sell the shares back to Mbanq at $6.90 per share. Mbanq also agreed to pay Lopatine $2,000.00 per month for two hours of work per week and an additional $200.00 per hour for any additional work performed.

18.     The LOI also provided that Mbanq would purchase 100% of A4, including all of A4's intellectual property, existing clients, and receivables. Ravnborg and his wife, Juliana, would stay on with the company, as employees for Mbanq. In exchange for Park Capital's 95% share of A4, Mbanq agreed to pay Park Capital a cash sum (the "Purchase Price") and issue 1.50% of Mbanq's shares to Park Capital, with a put option to sell the shares back to Mbanq at $6.90 per

---

[1] For example, Lopatine introduced Mbanq to David Richards, who previously worked for Lopatine at Nymbus. Mbanq hired Mr. Richards as its Chief Revenue Officer based on his decades of relevant experience in the industry.

5

share twelve (12) months after the LOI. This payment was in addition to Lopatine's compensation as an advisory board member (as discussed in paragraph 14 above).

19.     Pursuant to the LOI, Mbanq was required to pay the Purchase Price as follows: (i) $50,000.00 to Park Capital, as a goodwill payment, and (ii) $25,000.00 payments to Park Capital in monthly installments until the Purchase Price was paid. However, if Mbanq received $4,000,000.00 or more in a funding round, or 24 months from closing passed, Mbanq was required to pay the full outstanding Purchase Price. *See id.*

20.     In April 2019, after Mbanq and Holdings entered into the LOI, Mbanq offered to hire Lopatine as Head of Americas of Mbanq for at least one year. Lopatine accepted the offer and executed an agreement (the "Head of Americas Agreement"), drafted by Mbanq, wherein he agreed to join Mbanq as Head of Americas. Mbanq then announced Lopatine's position as Head of Americas in various press articles to attract investors. However, Mbanq failed to execute the Head of Americas Agreement.

21.     Shortly after the execution of the LOI, on June 28, 2019, Mbanq, Holdings, and Ravnborg entered into the SPA for the sale of A4. Pursuant to the SPA, Holdings and Ravnborg agreed to sell all 107,204 shares of issued and outstanding common stock of A4 to Mbanq at the nominal price of $0.001 per share, for a nominal total of $107.41.

22.     Simultaneously with the execution of the SPA, Park Capital, and Mbanq executed two promissory notes ("Promissory Note 1" and "Promissory Note 2," collectively, the "Promissory Notes"). True and correct copies of the Promissory Notes are attached hereto as **Composite Exhibit "B."**

23.    Pursuant to Promissory Note 1, Mbanq agreed to pay Ventures[2] the sum of $831,549.00 in monthly installments of $25,000.00. However, if Mbanq received $4,000,000.00 or more in a funding round, achieved $4,000,000.00 in cash flow, or 24 months from closing passed, Mbanq was required to pay the full outstanding amount. *See id.*

24.    Pursuant to Promissory Note 2, Mbanq agreed to, among other things, pay HelloBuild the sum of $188,496.00 and Holdings the sum of $83,000.00 whenever Mbanq received $4,000,000.00 or more in a funding round or Mbanq achieved $4,000,000.00 in cash flow, whichever occurred earlier. *See id.*

25.    Furthermore, in accordance with the LOI, in July 2019[3], Mbanq delivered a stock certificate issuing 206,232 shares of Mbanq, which represent approximately 1.7% of Mbanq's shares to Ventures. A true copy of the stock certificate is attached hereto as **Exhibit "C."**

## II.    Mbanq Breaches the Agreements

26.    In April 2019, Mbanq paid the $50,000.00 goodwill payment required pursuant to the LOI in two (late) installments—a $20,000.00 payment on April 4, 2019, and a $30,000.00 payment on April 9, 2019.

27.    That same month, Lopatine met with representatives of Mbanq in Miami to discuss his responsibilities as an advisor and as Head of Americas of Mbanq. Lopatine and Mbanq agreed that Lopatine would help Mbanq further develop the A4 software, with the help of HelloBuild, set

---

[2] Promissory Note 1 mentions an agreement to pay "Park Capital Ventures and Solution Capital HK" however the parties included "Solution Capital HK" just as an alternative company affiliated with Lopatine and Park Capital, in the event that it would have been easier to transfer the funds to a Hong Kong company, which were at all times due to Lopatine and Park Capital. However, Solution Capital HK was not a party to the Agreements, and did not provide any consideration to Mbanq.

[3] The stock certificate was backdated by Mbanq and is dated March 2018. However, Mbanq delivered the stock certificate to Ventures in July 2019 as part of the A4 purchase and sale transaction.

up a sales system, and introduce Mbanq to investors. Lopatine fully performed his obligations under the Head of Americas Agreement with Mbanq.

28.      In May 2019, Lopatine began to introduce Mbanq to over thirty investors and pursuant to the LOI, Mbanq agreed to begin paying the $25,000.00 monthly installments. However, Mbanq did not make full $25,000.00 payments and started paying the amounts in small sums, in direct breach of the LOI.

29.      Even after the SPA and the Promissory Notes were negotiated and signed, Mbanq continued to breach the LOI and Promissory Note 1 by failing to pay the full $25,000.00 installment payment to Ventures. Instead, Mbanq sporadically paid small sums ranging from $1,000.00 to $15,000.00 via wire transfer, PayPal, and Venmo. A true and correct copy of the ledger evidencing all payments made by Mbanq is attached hereto as **Exhibit "D."** Plaintiffs fully performed their obligations under the LOI, the SPA, and the Promissory Notes.

30.      During this time, Lopatine, on behalf of Park Capital, communicated weekly with Lounegov, as representative of Mbanq, to inform Mbanq of its breaches of the LOI, and Promissory Note 1, and to repeatedly request payment of all outstanding sums that Mbanq owed Ventures.[4]

31.      In August 2020, counsel for Lopatine and Park Capital attempted to resolve the dispute with Mbanq, and again made demands for Mbanq to make payments of the outstanding sums owed. For example, on September 3, 2020, counsel for Lopatine and Park Capital sent an email to Lounegov, proposing a structured payment plan to pay the outstanding sum of

---

[4] In a good-faith effort to resolve all outstanding payments owed to Park Capital, Park Capital even attempted to negotiate a perpetual license of one of Mbanq's products to satisfy a portion of the debt that Mbanq owed to Park Capital. Ultimately, these negotiations were fruitless and Mbanq and Park Capital were unable to reach an agreement.

$228,603.00, which was the amount due at the time of the email. A true and correct copy of the September 3, 2020 email is attached hereto as **Exhibit "E."**

32.     However, despite the Plaintiffs' full performance of their obligations under the Agreements, in response to the September 3, 2020 email, Lounegov stated that Mbanq did not owe any sum of money to Ventures and stopped making payments all together, in further breach of the LOI and Promissory Note 1.

33.     Due to Mbanq's breach, on September 22, 2020, Ventures sent a demand letter ("Demand Letter"), to Mbanq demanding to inspect and copy certain books and records of Mbanq pursuant to 8 Del. C. § 220. The purpose of the Demand Letter was to, among other things: (1) ensure that Ventures' shares in Mbanq were properly recorded in its books and records and reflected the value Mbanq represented to Park Capital; (2) ensure that Mbanq's debt obligation to Park Capital was properly recorded in its books and records; (3) confirm Mbanq was able to pay down the debt owed to Park Capital; (4) confirm the value of the Mbanq software platforms; (5) determine whether Mbanq's officers and/or shareholders have properly discharged their fiduciary duties to Ventures; (6) investigate whether Mbanq accurately disclosed to its shareholders the dealings with Park Capital and debt that Mbanq still owes to Park Capital; (7) obtain information to determine whether Mbanq's officers and/or directors are independent and disinterested, and whether they have acted in good faith; and (8) take any appropriate action in the event that any wrongdoing is revealed. A true and correct copy of the Demand Letter is attached hereto as **Exhibit "F."**

34.     Ventures' purpose for the Demand Letter was and is proper because it is reasonably related to its interests as a shareholder. Furthermore, in compliance with 8 Del. C. § 220, the

Demand Letter was accompanied by a power of attorney authorizing counsel for Ventures to make the demand.

35.     Furthermore, after counsel for Lopatine and Park Capital initially communicated with Mbanq in August 2020, Mbanq cleared the contents of Lopatine's corporate Mbanq email address and after the Demand Letter, Mbanq deleted Lopatine's Mbanq corporate email account altogether.

36.     Mbanq did not respond to the Demand Letter until October 8, 2020, at which time Joe Reynoso ("Reynoso"), Mbanq's Chair of the Board of Directors, indicated that Park Capital was **not** reflected as a shareholder of Mbanq in any of Mbanq's records. In response, Park Capital provided proof of ownership of the shares of Mbanq, but Park Capital has not received any response from Mbanq in response to its Demand Letter.

37.     On December 12, 2020, Lopatine sent two emails to Mbanq. True and correct copies of the December 12, 2020 emails are attached hereto as **Composite Exhibit "G."** In the first email, Lopatine made a demand for the outstanding amount of $328,603.00 that was due by Mbanq pursuant to Promissory Note 1. In the second email, Lopatine exercised the Put Option set forth in the LOI to sell Ventures' 206,232 shares in Mbanq at $6.90 a share, for a total of $1,423,000.80. Mbanq did not respond to either email.

38.     Mbanq's failure to pay the outstanding amount owed to Ventures and Mbanq's failure to honor the Put Option to buy Ventures' 206,232 shares in Mbanq at $6.90 a share constitutes a material breach of the LOI and Promissory Note 1.

39.     Furthermore, during the negotiations of the LOI and the SPA, Mbanq represented to Park Capital that it had $2.5 million in revenue in 2018 and that it expected to have $6 million in revenue in 2019.

40.     Based on information presently available, Mbanq now has in excess of $4,000,000.00 in cash flow. As a result, the full unpaid amount of $621,152.00 under Promissory Note 1 is currently due and owing to Ventures. Additionally, pursuant to Promissory Note 2, the sum of $83,00.00 owed to Holdings, and the sum of $188,496.00 owed to HelloBuild are currently due and owing.

41.     Plaintiffs have retained the law firm of Shutts & Bowen, LLP, and have incurred an obligation to pay their counsel their reasonable attorneys' fees and costs.

42.     All conditions precedent to the maintenance of this action have been performed, have occurred or have been waived.

<u>**COUNT I – BREACH OF CONTRACT – BREACH OF LOI**</u>

43.     Plaintiffs reaffirm and reallege paragraphs 1-42 above as if fully set forth herein

44.     On February, 21, 2019, Mbanq sent Lopatine a LOI establishing an agreement wherein Park Capital agreed to sell its interest in A4 to Mbanq.

45.     The LOI provided that Lopatine would be offered a position on the Mbanq advisory board to assist in developing plans and strategy for Mbanq, introduce Mbanq to industry experts, bankers, and potential investors, identify key personnel and experts, and provide any other services that Mbanq may need. In exchange, Mbanq would issue 20,000 shares of Mbanq's common stock, representing .20% of Mbanq's shares, to Lopatine with a Put Option to sell the shares back to Mbanq at $6.90 a share.

46.     The LOI also provided that in exchange for Park Capital's share of A4, Mbanq agreed to pay Park Capital the Purchase Price and issue 1.50% of Mbanq's shares to Park Capital, with a put option to sell the shares back to Mbanq at $6.90 a share twelve (12) months after the LOI.

11

47.     Pursuant to the LOI, Mbanq was required to pay the Purchase Price as follows: (1) 50,000.00 to Park Capital, as a goodwill payment, and (2) $25,000.00 payments to Park Capital in monthly installments until the Purchase Price was paid. However, if Mbanq received $4,000,000.00 or more in a funding round, or 24 months from closing passed, Mbanq was required to pay the full outstanding Purchase Price.

48.     In accordance with the LOI, Mbanq delivered a stock certificate issuing 206,232 shares of Mbanq, which represent 1.7% of Mbanq's shares, to Ventures.

49.     Plaintiffs have fully performed its obligations pursuant to the terms of the LOI.

50.     Mbanq has materially breached the LOI in many ways, including but not limited to the following: (1) failing to honor the put option to buy Ventures' 206,232 shares in Mbanq at $6.90 a share; (2) failing to pay Ventures the $25,000 monthly payments as described in the LOI; and (3) failing to pay Ventures the total outstanding amount of $621,152.00 when it obtained $4,000.00 in cash flow.

51.     As a direct and proximate result of Mbanq's material breaches of the LOI, Plaintiffs have suffered damages.

**WHEREFORE**, Plaintiffs, ALEXANDER LOPATINE, PARK CAPITAL HOLDINGS, LLC, PARK CAPITAL VENTURES, LLC, and HELLOBUILD, LLC demand judgment against Defendant, FINLINK, INC. d/b/a MBANQ, for damages, interest, reasonable attorney's fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT – BREACH OF PROMISSORY NOTES

52.     Plaintiffs reaffirm and reallege paragraphs 1-42 above as if fully set forth herein.

53.     On June 28, 2019, Mbanq executed and delivered to Ventures **Promissory Note 1** in the amount of $831,549.00, representing the amount owed by Mbanq to Ventures.

54.     Pursuant to Promissory Note 1, Mbanq was required to pay Ventures the sum of $831,549.00 in monthly installments of $25,000.00 until the $831,549.00 debt was fully paid.

55.     However, if Mbanq received $4,000,000.00 or more in a funding round, achieved $4,000,000.00 in cash flow, or 24 months from closing passed, (whichever occurred earlier), Mbanq was required to pay the full outstanding amount to Ventures.

56.     Ventures presently owns and holds Promissory Note 1.

57.     Also, on June 28, 2019, Mbanq executed and delivered to HelloBuild and Holdings **Promissory Note 2**, representing $188,496.00 owed by Mbanq to HelloBuild and the $83,000.00 owed by Mbanq to Holdings.

58.     Pursuant to Promissory Note 2, Mbanq was required to pay HelloBuild the sum of $188,496.00 and Holdings the sum of $83,000.00, upon the earliest of: Mbanq receiving $4,000,000.00 or more in a funding round; or Mbanq achieving $4,000,000.00 in cash flow.

59.     Based on information presently available, Mbanq now has at least $4,000,000.00 in cash flow. Moreover, Mbanq has failed and refused to provide copies of the company books and records upon demand, which further supports Plaintiffs' good faith belief that Mbanq has reached $4,000,000.00 in cash flow.

60.     Mbanq has failed to comply with the terms and conditions of the Promissory Notes by failing to (1) pay Ventures the $25,000.00 monthly payments as described in Promissory Note 1; (2) pay Ventures the total outstanding amount of $621.152.00 when it obtained $4,000,000.00 in cash flow; and (3) pay HelloBuild the sum of $188,496.00 and Holdings the sum of $83,000.00 when it obtained $4,000,000.00 in cash flow. As a result, the Promissory Notes are in default and Mbanq has breached its obligations under the Promissory Notes.

61.     As a direct and proximate result of Mbanq's material breaches of the Promissory Notes, Plaintiffs have suffered damages.

62.     By reason of the foregoing default, Plaintiffs declare the full amount payable under the Promissory Notes to be immediately due and payable and hereby demand payment of all monies due and payable in accordance with the terms and provisions of the Promissory Notes.

63.     The total amount of $621,152.00, plus interest, is due and owing to Ventures under Promissory Note 1.

64.     The total amount of $83,000.00, plus interest, is due and owing to Holdings under Promissory Note 2.

65.     The total amount of $188,496.00, plus interest, is due and owing to Holdings under Promissory Note 2.

**WHEREFORE**, Plaintiffs, ALEXANDER LOPATINE, PARK CAPITAL HOLDINGS, LLC, PARK CAPITAL VENTURES, LLC, and HELLOBUILD, LLC demand judgment against Defendant, FINLINK, INC. d/b/a MBANQ, for damages, interest, reasonable attorney's fees and costs, and for such other and further relief as this Court deems just and proper.

<u>**COUNT III – PROMISSORY ESTOPPEL**</u>

66.     Plaintiffs reaffirm and reallege paragraphs 1-42 above as if fully set forth herein.

67.     Pursuant to the Agreements, including the LOI and the Promissory Notes, Mbanq represented and promised that in exchange for receiving full ownership of A4, Mbanq would, among other things: (1) pay Ventures the $25,000.00 monthly payments when due, as described in Promissory Note 1 and the LOI; (2) pay Ventures the total outstanding amount under Promissory Note 1 when it obtained $4,000,000.00 in cash flow; (3) pay HelloBuild the sum of $188,496.00

and Holdings the sum of $83,000.00 when it obtained $4,000,000.00 in cash flow; and (4) honor the Put Option to buy Ventures' 206,232 shares in Mbanq at $6.90 a share.

68.     In justifiable reliance on Mbanq's promises, Plaintiffs transferred their ownership in A4 to Mbanq and faithfully and diligently provided services to Mbanq in connection with the acquisition of A4 to their detriment.

69.     Mbanq has failed to, among other things: (1) pay Ventures the $25,000.00 monthly payments as described in Promissory Note 1 and the LOI; (2) pay Ventures the total outstanding amount under Promissory Note 1; (3) pay HelloBuild the sum of $188,496.00 and Holdings the sum of $83,000.00 due and owing; and (4) honor the Put Option to buy Ventures' 206,232 shares in Mbanq at $6.90 a share upon Ventures exercising its Put Option.

70.     Injustice can only be avoided by enforcing Mbanq's promises.

**WHEREFORE**, Plaintiffs, ALEXANDER LOPATINE, PARK CAPITAL HOLDINGS, LLC, PARK CAPITAL VENTURES, LLC, and HELLOBUILD, LLC demand judgment against Defendant, FINLINK, INC. d/b/a MBANQ, for damages, interest, and reasonable attorney's fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV – ACCOUNTING

71.     Plaintiffs reaffirm and reallege paragraphs 1-70 above as if fully set forth herein.

72.     Despite its fiduciary duty and obligations to its shareholders, including Plaintiffs, Mbanq has concealed details regarding its finances, including its available cash flow, its revenue, and its financial wherewithal.

73.     At all times relevant, Mbanq and its officers owed a fiduciary duty to Ventures to act in Ventures' best interests. Said duty arose as a result of Mbanq's duty to its shareholders, including Ventures, as well as Mbanq's duty to Lopatine and Park Capital pursuant to the LOI. As

a result of the aforesaid duties and obligations owed to Ventures, Mbanq had an obligation to provide Ventures with an accounting.

74.     Ventures does not have an adequate remedy, other than an equitable accounting, through which to gain for itself, a comprehensive understanding of the finances of Mbanq, including its available cash flow, its revenue, and its financial wherewithal, all of which affect the value of Ventures' shares, as well Mbanq's repayment obligations under the LOI and the Promissory Notes.

**WHEREFORE**, Plaintiff, PARK CAPITAL VENTURES, LLC, respectfully requests that this Court enter an Order compelling Defendant, FINLINK, INC. d/b/a MBANQ to render a full and complete accounting of the finances of Mbanq as they relate to Ventures' shares, and for such further relief as this Court deems just and necessary.

**COUNT V – UNJUST ENRICHMENT**

75.     Plaintiffs reaffirm and reallege paragraphs 6-15, above as if fully set forth herein.

76.     Mbanq has been unjustly enriched as a direct result of Plaintiffs' sale and transfer of all 107,204 shares of issued and outstanding common stock of A4 to Mbanq.

77.     By making the foregoing transfer to Mbanq, Plaintiffs have conferred benefits, including but not limited to, A4's reputation and goodwill, the assistance of its founder, the existing clients of A4, as well as a revenue stream, and intellectual property, which Mbanq received.

78.     Mbanq knowingly appreciated, accepted, and retained such benefits.

79.     Mbanq has not fully paid Plaintiffs for such benefits and Plaintiffs have been impoverished as a result thereof.

80.     There is no justification for Mbanq's enrichment or Plaintiffs' impoverishment, and under the circumstances, it would be inequitable for Mbanq to retain such benefits without paying the value thereof.

81.     Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiffs, ALEXANDER LOPATINE, PARK CAPITAL HOLDINGS, LLC, PARK CAPITAL VENTURES, LLC, and HELLOBUILD, LLC demand judgment against Defendant, FINLINK, INC. d/b/a MBANQ, for damages, interest, and reasonable attorney's fees and costs, and for such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Dated: February 2, 2021.                    Respectfully submitted,

By: */s/ Harold E. Patricoff*
Harold E. Patricoff
Florida Bar No. 508357
hpatricoff@shutts.com
Aleksey Shtivelman
Florida Bar No. 99159
ashtivelman@shutts.com
Isabella Llano
Florida Bar No. 1018625
illano@shutts.com
**SHUTTS & BOWEN LLP**
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida, 33131
(305) 358-6300
*Attorneys for Plaintiffs*

# Exhibit A



FinLink, Inc.
241 Center St, Ste B
Healdsburg, CA 95448
USA

February 21, 2019

Alex Lopatine
Miami, FL

Dear Alex,

Re: Letter of Intent

Letter of Intent

This document represents a memorandum for our discussion, that outlines the potential collaboration between FinLink, Inc. (doing business as Mbanq, hereinafter "Mbanq") and Alex Lopatine (hereinafter "Partner").

We have some exciting times ahead of us and look forward to working together in the future.

We propose several distinct areas for cooperation pertaining to Mbanq's USA market entry, including

- Advisory Board appointment
- US market sales commission
- potential acquisition of A4
- fundraising assistance

Subject to a separate commercial agreement(s), the parties agree on the following parameters for our collaboration:

A. Advisory Board Appointment

Alex is to be offered Mbanq Advisory Board position as described below.

Alex will be an independent advisor to Mbanq providing strategic advice and other services as requested, including introductions to industry experts, bankers and potential investors. Other such services shall include:

- Assistance with development of strategic plans & maintaining strategic focus

- Introduction of potential investors
- Identification of key personnel and subject matter experts as needed
- Recommendation of other Advisory Board members
- Research of potential clients for the company's products and services
- Adding value to the dialog regarding operations, challenges and opportunities as presented to the Advisory Board

This advisory role does not assume Alex's operational involvement in Mbanq's business. Alex's relationship with Mbanq will be that of an independent contractor and not that of an employee. Alex will not be eligible for any employee benefits. Alex will have no authority to enter into contracts that bind Mbanq or create obligations on the part of Mbanq without the prior written authorization of Mbanq.

Alex will be compensated as follows:

- An grant of 20,000 common stock in Mbanq representing 0.20% equity interest, with a put option to sell these shares back to Mbanq in 12 months at this round's valuation, or $6.90/share. Grant vests after 12 months of advisory service
- Retainer of $2,000 per month in consideration for 2 hours per week involvement as may be required by Mbanq
- An hourly rate of $200 over and above the number of hours covered by the retainer, assuming that these hours are not otherwise compensated via sales or fund-raising commissions.

Alex's Advisory Board appointment will be subject to a separate Agreement which shall continue for the minimum of one (1) year, after which time it may be terminated by either party for any reason upon one (1) month's prior written notice without further obligation or liability except for the compensation earned by Alex through such date of termination.

Alex's acceptance of this role will be subject to his acceptance of Mbanq's standard Non-Disclosure Agreement and Confidential Information and Invention Assignment Agreement attached hereto.

While Alex's appointment is active, Mbanq shall have the right to disclose the existence of this Agreement, Alex's status as an Advisor, and to include Alex's name, image and profile in various promotional materials, including, but not limited to, private placement memos or other offering materials, executive summaries and Mbanq's world wide web page.

B. US Market Sales Commission

In addition to the payments under the preceding paragraph, Mbanq will make commission payments to Partner based on 4.75% of the greater of the following:

- Actual set-up fees pertaining to the contracts you help close as outlined in the appendix to Mbanq's Software-as-a-Service agreement; OR

- • $250,000 in the event the set-up fees are included in monthly payments or any other reason.

Mbanq shall maintain records in sufficient detail for purposes of determining the amount of the commission. Mbanq shall provide to Partner a written accounting that sets forth the manner in which the commission payment was calculated.

Partner or Partner's agent shall have the right to inspect Mbanq's records for the limited purpose of verifying the calculation of the commission payments, subject to such restrictions as Mbanq may reasonably impose to protect the confidentiality of the records. Such inspections shall be made during reasonable business hours as may be set by Mbanq.

Subject to pre-approval, Mbanq will reimburse Partner for reasonable "out-of-pocket" expenses incurred by Partner in accordance with Mbanq's policies in effect from time to time.

C. Potential Acquisition of A4

Mbanq hereby expresses interest in the acquisition of up to 100% stake in Agilityfour, Inc. including, without limitation, the following:

a) All Intellectual Property, including all versions of the web-based channel architecture
b) All existing clients, including relationships and excluding historic receivables to the value of $180,000, payable to Build Co. in consideration for the prior development efforts. For the avoidance of doubt, Mbanq or A4 as a subsidiary of Mbanq will take care of the re-payment of this amount to Build Co (based on a separate agreement between Mbanq/A4 with Build Co.).
c) Any trademarks, websites etc.
d) Kai Ravnborg and Juliana Ravnborg

In consideration of the foregoing, the parties agree on the following deal structure (based on 95%):

a) Purchase Consideration of $1,055,000 adjusted for accounts receivables and actual equity percentage, subject to the following payment schedule:
    - • $50,000 as a good-will payment
    - • $25,000 per month until the earlier of:
        1. full repayment of the Purchase Consideration; OR
        2. next funding round of $4,000,000 and above; OR
        3. 24 months from closing
    - • upon achieving any one of the above events, the remainder of the Purchase Consideration becomes due
b) 1.50% in shares of Mbanq (or comparable instrument) on closing, with a put option to sell these shares back to Mbanq in 12 months at this round's valuation, or $6.90/share.

Post acquisition, Kai and Juliana will remain with Agilityfour, Inc. an Mbanq company, under the existing employment contracts. Kai's and Juliana's primary task will be convert all legacy clients into the new software package.

D. Fundraising Assistance

Partner shall devote significant time resources to assisting Mbanq raise additional capital, including, but not limited to: document / deck compilation, capital introductions, and attendance at capital-raising meetings. Mbanq must pre-approve each "capital target" to ensure that prior contact with target has not been made by Mbanq or any of its affiliates.

We are very excited about our partnership and look forward to welcoming you to the Mbanq family!

Regards,

Vladimir Lounegov          Joe Reynoso
CEO                        Chairman

Alexander Lopatine

Composite
Exhibit B

SUPPLEMENTAL AGREEMENT

This supplemental agreement ("Supplemental Agreement") dated as of June 28, 2019, is issued in conjunction with the stock purchase agreement ("Agreement") also dated as of June 28, 2019, jointly pertaining to the acquisition of 100% of stock in Agilityfour Inc. by FinLink, Inc. (the "Company").

This Supplemental Agreement represents a promissory note to pay Park Capital Ventures and Solution Capital HK, free from any interest and fees, the total of $831,549, in accordance with the payment schedule below, subject to available cashflow:

$25,000 per month until the earlier of:

- full repayment of the total of $831,549; OR
- next funding round of $4,000,000 and above; OR
- the Company achieving free cash flow of $4,000,000; OR
- 24 months from closing.

In witness thereof, the Parties hereby agree with the foregoing:

The Company

Park Capital                    Alexander Lopatine

Solution Capital

SUPPLEMENTAL AGREEMENT

This supplemental agreement ("Supplemental Agreement") dated as of June 28, 2019, is issued in conjunction with the stock purchase agreement ("Agreement") also dated as of June 28, 2019, jointly pertaining to the acquisition of 100% of stock in Agilityfour Inc. by FinLink, Inc. (the "Company").

This Supplemental Agreement represents a promissory note to pay the following parties (the "Parties") by way of compensation free from any interest and fees upon achievement of a certain milestones (the "Milestones") as described below.

The Parties and their compensation:

1. HelloBuild $188,496
2. Park Capital $83,000
3. Kai Ravnborg $31,955

The Milestones:

- next funding round of $4,000,000 and above; or
- the Company achieving free cash flow of $4,000,000;
- whichever sooner.

In witness thereof, the Parties hereby agree with the foregoing:

The Company

HelloBuild

Park Capital                              Alexander Lopatine

Kai Ravnborg

# Exhibit C

SEE RESTRICTIVE LEGEND(S) ON REVERSE

Number **CS-00024**     INCORPORATED UNDER THE LAWS OF     ***206,232*** Shares
THE STATE OF DELAWARE     **Common Stock**

## FINLINK, INC.

THIS CERTIFIES THAT **PARK CAPITAL VENTURES, LLC** is the record holder of **TWO HUNDRED SIX THOUSAND TWO HUNDRED THIRTY-TWO (206,232)** shares of the **Common Stock** of **FINLINK, INC.** hereinafter designated the "Corporation," par value $0.0001 per share, transferable on the share register of the Corporation by the holder, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed or assigned.

This Certificate and the shares represented hereby are issued and shall be held subject to all the provisions of the Certificate of Incorporation and the Bylaws of the Corporation and any amendments thereof, copies of which are on file at the office of the Corporation, and made a part hereof as fully as though the provisions of said Certificate of Incorporation and Bylaws were imprinted in full on this Certificate, to all of which the holder of this Certificate, by acceptance hereof, assents and agrees to be bound. The shares represented by this Certificate are subject to the legend(s) affixed to the back of this Certificate.

A statement of all the rights, preferences, privileges and restrictions granted to or imposed upon the respective classes or series of shares of stock of the Corporation and upon the holders thereof may be obtained by any stockholder, upon request, at the principal office of the Corporation, and the Corporation will furnish any stockholder, upon request and without charge, a copy of such statement.

IN WITNESS WHEREOF, the Corporation has caused this Certificate to be signed by its duly authorized officers on this 9th day of March 2018.

Vladimir Lounegov, Chief Executive Officer     Javier Valverde, Secretary

136425558.1

# Exhibit D

| reason | date | amount | number | status | amount | date paid | Venmo | date | PayPal | date |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | $2999.00 | 7/19/2019 | $5,000.00 | 07/30/2019 |
| 1st Installment | 2/22/2019 | $ 50,000.00 | | 24 paid | $ 20,000.00 | 04/04/2019 | $2999.00 | 7/25/2019 | $1,000.00 | 08/14/2019 |
| 2nd Installment | 2/23/2019 | $ 25,000.00 | 24 | | $ 30,000.00 | 04/10/2019 | $2999.00 | 8/8/2019 | $ 6,150.00 Total 2019: | |
| 3rd Installment | 6/18/2019 | $ 25,000.00 | 34 | | $ 10,000.00 | 05/28/2019 | $2500.00 | 10/7/2019 | $1,000.00 | 1/28/2020 |
| 4th Installment | | $ 25,000.00 | | | $ 10,000.00 | 05/31/2019 | $1000.00 | 11/29/2019 | $2,500.00 | 3/16/2020 |
| 5th Installment | 8/19/2019 | $ 25,000.00 | 45 | | $ 5,000.00 | 06/06/2019 | $100.00 | 12/5/2019 | $ 3,500.00 Total 2020: | |
| 6th Installment | 9/30/2019 | $ 25,000.00 | 56 | | $ 15,000.00 | 07/01/2019 | $250.00 | 12/5/2019 | $ 9,650.00 Total PayPal | |
| 7th Installment | 11/7/2019 | $ 25,000.00 | 60 | | $ 10,000.00 | 07/05/2019 | $ 12,847.00 Total 2019: | | | |
| 8th Installment | 11/20/2019 | $ 25,000.00 | 62 | | $ 5,000.00 | 8/22/2019 | $2500.00 | 1/28/2020 | | |
| 9th Installment | 12/23/2019 | $ 25,000.00 | 69 | | $ 25,000.00 | 10/10/2019 | $500.00 | 2/13/2020 | | |
| Total 2019: | | $ 250,000.00 | | | $ 5,000.00 | 11/14/2019 | $500.00 | 3/12/2020 | | |
| 10th Installment | 1/17/2020 | $ 25,000.00 | 79 | | $ 5,000.00 | 12/24/2019 | $2400.00 | 3/13/2020 | | |
| 11th Installment | 2/27/2020 | $ 25,000.00 | 83 | | $ 3,000.00 | 12/30/2019 | $ 5,900.00 Total 2020: | | | |
| 12th Installment | 3/31/2020 | $ 25,000.00 | 99 | | $ 143,000.00 Total 2019: | | $ 18,747.00 Total Venmo | | | |
| 13th Installment | 4/31/20 | $ 25,000.00 | 100 | | $ 1,000.00 | 03/16/2020 | | | | |
| 14th Installment | 5/12/2020 | $ 25,000.00 | 101 | | $ 5,000.00 | 04/28/2020 | | | | |
| 15th installment | 6/19/2020 | $ 25,000.00 | | | $ 5,000.00 | 05/11/2020 | | | | |
| 16th installment | 7/21/2020 | $ 25,000.00 | | | $ 5,000.00 | 05/15/2020 | | | | |
| 17th installment | 8/15/2020 | $ 25,000.00 | | | $ 3,000.00 | 05/22/2020 | | | | |
| 18th installment | 9/15/2020 | $ 25,000.00 | | | $ 5,000.00 | 06/02/2020 | | | | |
| Total 2020 to date: | | $ 225,000.00 | | | $ 5,000.00 | 06/11/2020 | | | | |
| Total invoiced: | | $ 475,000.00 | | | $ 5,000.00 | 7/2/2020 | | | | |
| | | | | | $ 5,000.00 | 7/15/2020 | | | | |
| Total outstanding to | | $ 253,603.00 | | | $ 1,000.00 | 7/25/2020 | | | | |
| Total debt to Park | | $ 831,549.00 | | | $ 5,000.00 | 8/1/2020 | | | | |
| Capital Ventures: | | | | | $ 5,000.00 | 8/20/2020 | | | | |
| Total outstanding: | | $ 665,946.00 | | | $ 50,000.00 Total 2020: | | | | | |
| Total debt to Park | | $ 83,000.00 | | | $ 221,397.00 Total paid: | | | | | |
| Capital Holdings: | | | | | | | | | | |
| Total debt to HelloBuild: | $ 188,496.00 | | | | $ 161,997.00 Total paid 2019 | | | | | |
| Total debt to Pinta (Mike Valdes Faul)i: | $ 5,000.00 | | | | $ 59,400.00 Total paid 2020 | | | | | |

# Exhibit E

**From:** nneuman@lawofficesnn.com <nneuman@lawofficesnn.com>
**Sent:** Thursday, September 3, 2020 11:09 AM
**To:** Vladimir Lounegov <vladimir.lounegov@mbanq.com>
**Subject:** Park Capital Ventures, LLC/FinLink, Inc. dba Mbanq Matter - Principal Balance: $831,549.00; Current Past Due Principal Balance: $228,603.00

Hello Vlad.

My name is Nathan Neuman and we represent Park Capital Ventures, LLC (Park) regarding a debt obligation owed to it by Finlink, Inc. dba Mbanq (collectively hereafter "FLI") in which the current balance owed to Park totals $228,603.00. This balance stems from the sale of the stock of Agilityfour, Inc. to FLI in June 2019. I have attached the relevant documents verifying same together with Park's authorization letter. We understand that the parties have agreed to a payment plan of $25K per month which has been in default by FLI for some time (we understand that FLI has been making payments, but not @ $25K per month). I would like to discuss a structured payment plan with you to the satisfaction of all parties. Please advise when we can discuss. Thank you for your prompt attention.

Regards,
Nathan Neuman

Law Offices of Nathan Neuman
National Judgment Investment Corp.
700 Lake Drive
Ambler, PA 19002-5084
215-646-9520 Tel
215-646-9521 Fax

nneuman@lawofficesnn.com
nneuman@njicorp.com
www.njicorp.com

************************************************************************************************************************
********************
This e-mail and any attachments may contain information which is confidential, proprietary, privileged or otherwise protected by law. The information is solely intended for the named addressee (or a person responsible for delivering it to the addressee). If you are not the intended recipient of this message, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this e-mail in error, please notify the sender immediately by return e-mail and delete it from your computer.
************************************************************************************************************************

Regards,
Nathan Neuman

Law Offices of Nathan Neuman
National Judgment Investment Corp.
700 Lake Drive
Ambler, PA 19002-5084
215-646-9520 Tel
215-646-9521 Fax

1

nneuman@lawofficesnn.com
nneuman@njicorp.com
www.njicorp.com

*******************************************************************************************************************
********************

This e-mail and any attachments may contain information which is confidential, proprietary, privileged or otherwise
protected by law. The information is solely intended for the named addressee (or a person responsible for delivering it to
the addressee). If you are not the intended recipient of this message, you are not authorized to read, print, retain, copy or
disseminate this message or any part of it. If you have received this e-mail in error, please notify the sender immediately
by return e-mail and delete it from your computer.
*********************************************************************************************************

# Exhibit F

ROBERT W. PITTMAN, P.A.
ATTORNEY & COUNSELOR AT LAW

100 N BISCAYNE BLVD
SUITE 3070
MIAMI, FLORIDA 33132

PHONE:   786.777.0205
FAX:        786.777.0206
rpittman@gmail.com

September 22, 2020

VIA E-MAIL

Vladimir Lounegov
*vladimir.lounegov@mbanq.com*
Joe Reynoso
*joe.reynoso@mbanq.com*
Lars Rottweiler
*lars.rottweiler@mbanq.com*
Karlo Kosina
*karlo.kosina@mbanq.com*
FinLink, Inc.
241 Center Street, Suite B
Healdsburg, CA  95448

Re: *Demand to Inspect Books & Records of FinLink, Inc.*

Dear Sirs:

I represent Alexander Lopatine, Park Capital Holdings, LLC, and Park Capital Ventures, LLC (collectively "Park Capital"). Park Capital owns 206,232 shares of common stock of FinLink, Inc. ("FinLink"). Attached as Exhibit "A" hereto is a true and correct copy of Park Capital Venture, LLC's Verification of Stock Ownership and Demand for Books and Records.

Pursuant to Delaware Code Title 8 § 220, we hereby make the following verified demand for inspection of the books and records identified below ("Demand"). *See* Ex. A (containing verification). Park Capital's power of attorney authorizing me to act on its behalf is attached as Exhibit "B."

**Background History**

As you know, Park Capital acquired its shares in FinLink as partial compensation for Park Capital's July 2019 sale of Agilityfour Inc. shares to FinLink. FinLink was also supposed to pay a total of $831,549 to Park Capital, of which $665,946 remain unpaid. The parties' have discussed FinLink's partial satisfaction of its debt to Park Capital by licensing FinLink's Mbanq Cloud software platform to Park Capital perpetually and allowing it to customize and develop a fork of the software platform for its commercial uses. Despite these discussions, FinLink has

*September 22, 2020*
*Page 2 of 3*

suddenly stopped making payments as of September 2020, purportedly because of limited cash-flow. Throughout,   Park Capital is also concerned about the recent erasure of all of the email history and data from the Mbanq email address assigned by FinLink to Mr. Lopatine.

### *Basis for Books & Records Demand*

Based on the above facts, Park Capital would like to confirm, *inter alia*: that its stockholder status and compensation it is owed are properly reflected in FinLink's books and records; the value of Park Capital's interests in FinLink; and FinLink's ability and efforts to satisfy its debt to Park Capital. Further, because it directly relates to both the value of FinLink and is being discussed as a possible form of compensation, Park Capital would like to review the code of FinLink's Mbanq software platform to ensure that it is indeed fully-operational proprietary software—and not, for example, primarily open source code, code licensed from third parties, or otherwise unfinished back-end or non-operational software.

### *Books and Records Demanded*

Based on the reasons set forth above, Park Capital demands that FinLink produce the following books and records during FinLink's usual business hours for inspection and copying. Unless otherwise specified, the relevant time period for this Demand is from January 1, 2019 through the present (the "Relevant Period"). The information sought by this Demand includes:

1. List of FinLink Stockholders and Capitalization Table.
2. FinLink's Profit and Loss Statements and Balance Sheets for 2018 and 2019. If not itemized therein, all books and records delineating the amount of revenues broken down by license sales, set up fees, and software-as-a-service fees.
3. Access to review the code for FinLink's Mbanq software platforms.
4. All books and records dated or created during the Relevant Period related to any proceedings of FinLink's Board or a committee of the Board if those proceedings in any way relate to Alexander Lopatine, Park Capital Holdings, LLC, Park Capital Ventures, LLC, Agilityfour Inc., the Mbanq software platforms, FinLink's cash flow, and/or FinLink's viability as going concern. This request includes but is not limited to minutes of meetings of the Board or its committees.
5. All other books and records dated or created during the Relevant Period related to Alexander Lopatine, Park Capital Holdings, LLC, and Park Capital Ventures, LLC, Agilityfour Inc., or the Mbanq software platforms, FinLink's cash flow, and/or FinLink's viability as going concern.

For purposes of this Demand, the term "books and records" shall mean and include all paper or electronic documents and records, including, but not limited to, all memoranda, letters, minutes, resolutions, invoices, agreements, ledgers, reports, emails, transcripts, statements,

*September 22, 2020*
*Page 3 of 3*

instant messages, files, database records, spreadsheets, photographs, and audio or video recordings, whether in the files of individuals, shared files, computer hard drives, network drives, cloud storage, optical storage disks, tape backups, flash drives, or any other storage device or medium, whether sent, received, created, or collected by FinLink or by any officer, director, employee, or agent of FinLink. Additionally, the term "books and records" shall include all of the documents and records indicated above that are in the custody, possession, or control of FinLink or its agents. The above list is not meant to be exclusive, but instead sets forth by example the types of materials FinLink should make available.

This Demand is being made in good faith and for a proper purpose to enable Park Capital to: (1) ensure that its shares in FinLink are properly recorded in its books and records and reflect the value FinLink represented to Park Capital; (2) ensure that FinLink's debt obligation to Park Capital is property recorded in its books and records; (3) confirm FinLink's ability to pay down the debt owed to Park Capital; (4) confirm the value of the Mbanq software platforms; (5) determine whether FinkLink's officers and/or directors have properly discharged their fiduciary duties to Park Capital and its other stockholders; (6) investigate whether FinLink accurately disclosed to its stockholders the dealings with Park Capital and debt FinLink still owes to Park Capital; (7) obtain information to determine whether or not FinLink's officers and/or directors are independent and disinterested, and whether they have acted in good faith; and (8) take any appropriate action in the event that any wrongdoing is revealed. These purposes are reasonably related to Park Capital's interests as a stockholder.

Please respond to this Demand by contacting me within five business days after the date of receipt of this Demand to advise when and where the items demanded will be made available for inspection and copying. We believe that this Demand complies with the provisions of Section 220 in all material respects. If FinLink believes that this Demand is incomplete or otherwise deficient in any respect, or if all of the items requested above cannot be made available to us within the time frame requested, please contact me immediately in writing. Such correspondence shall set forth the facts that FinLink contends support its position, and shall specify, as appropriate, any additional information believed to be required, so that any purported deficiencies may be addressed promptly. In the absence of such notice, we will assume that FinLink agrees that this Demand complies in all respects with the requirements of Section 220. Park Capital reserves the right to withdraw or modify this Demand at any time.

If you have any questions regarding the scope of the request, please contact me directly.

Very truly yours,

/s/ *Robert W. Pittman*

Robert W. Pittman

**VERIFICATION OF STOCK OWNERSHIP**
**AND DEMAND FOR BOOKS AND RECORDS**

I, Alexander Lopatine, as Managing Member of Park Capital Ventures, LLC, declare:

1.     I am the Managing Member of Park Capital Ventures, LLC ("Park Capital Ventures"), a stockholder of FinLink, Inc. ("FinLink").

2.     FinLink issued 206,232 shares of Common Stock to Park Capital Ventures ("Shares") as reflected in a stock certificate dated March 2018 that was delivered to Park Capital Ventures in July 2019. A true and correct copy of the FinLink Stock Certificate is attached as Exhibit 1.

3.     Park Capital Ventures continues to be the sole and unencumbered holder of the Shares.

4.     I have read the demand letter dated September 22, 2020 prepared by my attorney to FinLink demanding to inspect the books and records of FinLink ("Demand"). The facts stated therein are true and correct, and Park Capital Ventures authorizes the Demand.

Under penalties of perjury, I declare that I have read the foregoing Verification of Stock Ownership and Demand for Books and Records and that the facts stated in it are true to the best of my knowledge and belief.

Executed on September 22, 2020, at Miami-Dade County, Florida.

Alexander Lopatine, as Managing Member
of Park Capital Ventures, LLC

SEE RESTRICTIVE LEGEND(S) ON REVERSE

Number **CS-00024**
INCORPORATED UNDER THE LAWS OF
THE STATE OF DELAWARE
**\*206.232\*** Shares
**Common Stock**

## FINLINK, INC.

THIS CERTIFIES THAT **PARK CAPITAL VENTURES, LLC** is the record holder of **TWO HUNDRED SIX THOUSAND TWO HUNDRED THIRTY-TWO (206.232)** shares of the **Common Stock** of **FINLINK, INC.** hereinafter designated the "Corporation," par value $0.0001 per share, transferable on the share register of the Corporation by the holder, in person or by duly authorized attorney, upon surrender of this Certificate properly endorsed or assigned.

This Certificate and the shares represented hereby are issued and shall be held subject to all the provisions of the Certificate of Incorporation and the Bylaws of the Corporation and any amendments thereof, copies of which are on file at the office of the Corporation, and made a part hereof as fully as though the provisions of said Certificate of Incorporation and Bylaws were imprinted in full on this Certificate, to all of which the holder of this Certificate, by acceptance hereof, assents and agrees to be bound. The shares represented by this Certificate are subject to the legend(s) affixed to the back of this Certificate.

A statement of all the rights, preferences, privileges and restrictions granted to or imposed upon the respective classes or series of shares of stock of the Corporation and upon the holders thereof may be obtained by any stockholder, upon request, at the principal office of the Corporation, and the Corporation will furnish any stockholder, upon request and without charge, a copy of such statement.

IN WITNESS WHEREOF, the Corporation has caused this Certificate to be signed by its duly authorized officers on this 9th day of March 2018.

Vladimir Lounegov, Chief Executive Officer

Javier Valverde, Secretary

136425558.1

## LIMITED POWER OF ATTORNEY

KNOW ALL BY THESE PRESENTS, that I, Alexander Lopatine, as the Managing Member of Park Capital Ventures, LLC, desire to execute a LIMITED POWER OF ATTORNEY, have made, constituted and appointed, and by these presents do make, constitute and appoint, Robert W. Pittman, Esq., a legal resident of the Miami-Dade County, State of Florida, as my Attorney-in-Fact in my name, place, and stead to do and perform all acts, deeds, matters, and things concerning the my personal property and affairs necessary and advisable in the judgment of my said Attorney-in-Fact as fully and effectually to all intents and purposes as if I was personally present, *but acting limited to the following matters:*

1.  BOOKS & RECORDS DEMANDS:  To request, obtain, and review the books, records, Mbanq software code, and any other FinLink, Inc. documents, records, or other material to enable Park Capital to: (1) ensure that its shares in FinLink are properly recorded in its books and records and reflect the value FinLink represented to Park Capital; (2) ensure that FinLink's debt obligation to Park Capital is property recorded in its books and records; (3) confirm FinLink's ability to pay down the debt owed to Park Capital; (4) confirm the value of the Mbanq software platforms; (5) determine whether FinkLink's officers and/or directors have properly discharged their fiduciary duties to Park Capital and its other stockholders; (6) investigate whether FinLink accurately disclosed to its stockholders the dealings with Park Capital and debt FinLink still owes to Park Capital; (7) obtain information to determine whether or not FinLink's officers and/or directors are independent and disinterested, and whether they have acted in good faith; and (8) take any appropriate action in the event that any wrongdoing is revealed.

2.  MISCELLANEOUS:  To sign, seal, acknowledge and deliver any instrument necessary to accomplish any of the powers herein granted.

I hereby ratify and confirm all lawful acts done by my said Attorney-in-Fact pursuant to this Limited Power of Attorney, and I direct that it shall continue in effect for 18 months or terminated by me or by operation of law.

Witnessed this 22ᵈ day of September 2020 by:

Print Name: _Scott Bro Vega_

Print Name: _Marqlina_

EXECUTED this 22ᵈ day of September 2020 by:

_____
Alexander Lopatine as Managing Member of
Park Capital Ventures, LLC

State of Florida            )
County of Miami-Dade        )

The foregoing affidavit was sworn and subscribed before me this 22ᵈ day of September, 2020, by Alexander Lopatine, who is personally known to me or produced Florida Driver License SG Exp: 08/18/2025. [*document*] as identification and who did take an oath.

_____
Notary Public State of Florida

My commission expires:

ARACELLY CRUZ
Notary Public - State of Florida
Commission # GG 155453
My Comm. Expires Oct 28, 2021

Composite
Exhibit G

**From:** Alexander Lopatine <alopatine@parkcapital.io>
**Date:** December 12, 2020 at 11:22:23 PM EST
**To:** Vladimir Lounegov <vladimir.lounegov@mbanq.com>, joe.reynoso@mbanq.com, Lars.Rottweiler@mbanq.com, joer@ramllc.com, karlo.kosina@mbanq.com
**Subject: Re: Park Capital Exercise of Put Option**

Dear Mr. Reynoso,
Dear Mr. Lounegov,

Pursuant to the parties' agreement reflected, *inter alia,* in the letter of intent dated February 21, 2019, Park Capital Ventures, LLC exercises the put option in its 206,232 shares of FinLink, Inc. at the exercise price of $6.90 per share.

Once we receive the funds, Finlink will be returned the certificate of shares, or we can provide it to an escrow agent for release to you after payment if you prefer. Please let me if you intend to send the funds by check or if you prefer wire instructions.

Sincerely,
Alexander Lopatine

**Alexander Lopatine** / CEO

**Park Capital** | 3058429166 | alopatine@parkcapital.io

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. You cannot use or forward any attachments in the email. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system.

**From:** Alexander Lopatine <alopatine@parkcapital.io>
**Date:** December 12, 2020 at 11:17:04 PM EST
**To:** Vladimir Lounegov <vladimir.lounegov@mbanq.com>, joe.reynoso@mbanq.com
**Cc:** joer@ramllc.com, Lars.Rottweiler@mbanq.com, karlo.kosina@mbanq.com
**Subject: Re. outstanding payment of $328,603.00**

Dear Mr. Reynoso,
Dear Mr. Lounegov,

Please find the invoices for October, November and December 2020 attached, as a reminder of your obligations in accordance with the promissory note that you have signed in relation with the acquisition of Agilityfour, Inc.

A total of $328,603.00 is due and outstanding today - based on the $25K a month agreed schedule (according to the signed promissory note).

Please let me know when can we receive the outstanding payment of $328,603.00.

Any resolution needs to come through the Law Offices of Robert W. Pittman, P.A.


Thank you.

Sincerely,
Alexander Lopatine

**Alexander Lopatine** / CEO

**Park Capital** l 3058429166 l alopatine@parkcapital.io

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. You cannot use or forward any attachments in the email. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system.