United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Alexander Lopatine and others, Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 21-20987-Civ-Scola ) ) |
| Finlink, Inc., Defendant. | ) |

**Order on Motion to Dismiss**

This matter is before the Court upon the Defendant's motion to dismiss the Plaintiff's complaint for lack of personal jurisdiction. For the reasons set forth below, the Court **grants** the Defendant's motion. (**ECF No. 18**.)

**1. Background**

This dispute spins out of the Defendant's alleged breach of a Letter of Intent ("LOI") and two promissory notes that were entered into by the parties when the Defendant purchased a technology company, Agilityfour, Inc. ("A4") from the Plaintiffs. (Complaint, ECF No. 1, at ¶ 1.) The Plaintiffs state that, pursuant to the sale, the Defendant was to pay the Plaintiffs over $2,000,000.00 for 100% interest in the company through cash payments as well as by the transfer of stock which would include a put option. (*Id.*, at ¶ 2.) After the Plaintiffs sold and transferred their interest in A4, the Plaintiffs state that the Defendant began to default under their Share Purchase Agreement ("SPA") which governed the sale of A4.

The Defendant does not seek to dismiss this matter for failure to state a claim, but rather, asserts this matter must be dismissed as the Court lacks personal jurisdiction over the Defendant. While the Plaintiffs acknowledge that the Defendant "is a Delaware corporation with its principal place of business in Sonoma County, California" the Plaintiffs nonetheless state "[t]his Court has jurisdiction over the claims in this Complaint Under Fla. Stat. § 48.193(1), (6), and (7)" because the Defendant "engaged in substantial, systematic, and not isolated activity in Florida" and "directed its activities at the State of Florida, including by engaging in negotiations to purchase A4 in Florida and to Florida residents and communicating with Plaintiffs in Florida." (*Id.*, at ¶ 10-11.) The Defendant counters that Finlink has no employees, conducts no business, and did not negotiate this transaction in the state of Florida. The Defendant further argues that even if the Court finds Florida's long-arm statute applies, exercise

of jurisdiction over Finlink, where Finlink conducts no business in the state, would violate traditional notions of fair play and substantial justice.

## 2. Legal Standard

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. District courts must apply a two-part analysis to determine whether it has personal jurisdiction over a non-resident defendant. *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). First, the district court must determine whether the applicable state's long-arm statute provides a basis for personal jurisdiction. *Id.* If so, then the district court turns to whether sufficient minimum contacts exist between the forum state and the defendant "so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." *Id.* (internal quotation marks and citations omitted).

Where a plaintiff meets its initial burden and makes out a prima facie case in support of a court's exercise of personal jurisdiction over a defendant, courts may then consider affidavits, documents, or other testimony provided by the defendant challenging the allegations supporting personal jurisdiction. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *see also Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Should a defendant provide such material, the burden then shifts back to the plaintiff to produce evidence supporting personal jurisdiction. *Stubbs*, 447 F.3d at 1360. All reasonable inferences must be construed in favor of the plaintiff. *Id.*

## 3. Analysis

To determine whether a plaintiff has adequately alleged personal jurisdiction over a foreign defendant, the Court first asks whether there is jurisdiction under Florida's long-arm statute and next determines whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). Florida's long-arm statute provides two means for subjecting a foreign defendant to the jurisdiction of Florida courts: 1) "a defendant is subject to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—for conduct specifically enumerated in the statute"; and 2) "a defendant is subject to *general* personal jurisdiction—that is, jurisdiction over any claims against a

defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida." *Id.* (internal quotations omitted) (emphasis in original) (discussing Fla. Stat. § 48.193). Under either form of personal jurisdiction, the defendant must have "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This latter inquiry focuses on the defendant's contacts with the state, and not the "random, fortuitous, or attenuated" contacts it has by interacting with other persons affiliated with the state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Here, the Defendant argues that the Court lacks either form of personal jurisdiction over the Defendant, Finlink, Inc.

### A. General Personal Jurisdiction

The Court turns first to the Defendant's argument that the Court lacks general personal jurisdiction over Finlink. The Court agrees with the Defendant that the Plaintiffs have failed to state that the Defendant is subject to the Court's general jurisdiction. Under Florida's long-arm statute, general jurisdiction "extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (discussing Florida law). Thus, determining whether general personal jurisdiction is proper is a one-step inquiry which requires courts to determine whether the exercise of jurisdiction over a defendant would exceed constitutional bounds. *Id.*

A court may assert general jurisdiction over foreign defendants, consistent with the Due Process Clause, when their "'affiliations with the state are so continuous and systematic as to render them essentially at home in the forum State." *Waite*, 901 F.3d at 1317 (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted)). The Supreme Court explained in *Daimler AG v. Bauman*, that only a "limited set of affiliations with a forum" will render a defendant "essentially at home"—a corporate defendant is paradigmatically at home in the place where it is incorporated and where it has its principal place of business. 571 U.S. 117, 137 (2014). Outside of these paradigmatic circumstances, a corporate defendant will be considered at home in the "exceptional case" where it has operations that are "so substantial and of such a nature as to render the corporation at home in that state." *Waite*, 901 F.3d at 1317 (discussing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)). The Eleventh Circuit explained a corporate defendant may only be subject to general jurisdiction in Florida if its corporate activities "closely approximate the activities that ordinarily

characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015). The Plaintiffs have failed to introduce any colorable arguments to show that this non-resident Defendant with its principal place of business in California and place of incorporation in Delaware is essentially at home in Florida, or conducts business that is so substantial that it should be viewed as essentially at home here. Accordingly, the Court finds it does not have general personal jurisdiction over Finlink.

### B. Specific Personal Jurisdiction

The Court's inquiry, then, focuses on whether the Plaintiffs have adequately alleged specific personal jurisdiction over the Defendant in its complaint. To determine whether the exercise of specific jurisdiction is proper, the Court first asks whether the defendant has engaged in conduct within the ambit of Florida's long-arm statute. If the long-arm statute applies, the Court then applies a three-part test to determine if the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, asking: 1) whether the plaintiff has established that its claims arise out of or relate to at least one of the defendant's contacts with the forum; 2) whether the plaintiff has demonstrated that the defendant purposefully availed itself of the jurisdiction; and 3) where the plaintiff has succeeded under prong one and two, whether exercise of specific jurisdiction would violate notions of fair play and substantial justice. *Waite*, 901 F.3d at 1312-13.

Upon review of the Plaintiffs' complaint, the Court finds the Plaintiffs have adequately alleged specific personal jurisdiction over the Defendant with regards to Florida's long-arm statute. Specifically, the Plaintiffs allege, for instance, that the Defendant "engaged in negotiations to purchase A4 in Florida and communicated with Plaintiffs in Florida . . . and caused damage to Plaintiffs in Florida by failing to make payments which were due and payable in Florida." (Complaint, ECF No. 1, at ¶ 11-12.) The Court finds that at the motion to dismiss stage, these allegations are sufficient to establish the Court's specific personal jurisdiction over the Defendant under Florida's long-arm statute.

As the Plaintiffs have set forth a prima facie case of jurisdiction, the Defendant may attempt to defeat jurisdiction by providing affidavits, documents, or other testimony in an effort to challenge the allegations supporting such a finding. *Wyndham*, 447 F.3d at 1360. As part of its effort to defeat jurisdiction, the Defendant provided the Court with an affidavit from Finlink's CEO, Vladimir Lounegov. (Dec. of Vladimir Lounegov, ECF No. 18, at 22.) In his declaration, Mr. Lounegov states that Finlink is a Delaware corporation with its principal place of business in California; that Finlink has

no employees or operations in Florida; has never sold any products in Florida; that A4, the company Finlink bought, is a Tennessee corporation; and that Finlink employees did not travel to Florida to negotiate the A4 deal. (*Id.* at ¶¶ 2-6, 10, 14.) Mr. Lounegov concedes that, on one occasion, he and another Finlink employee, Lars Rottweiler, met in April 2019 with Lopatine in Florida during a layover in Miami. (*Id.* at ¶ 21.) He states that his meetings with Lopatine in Miami were primarily social, occurring at restaurants, and while there may have been discussions relating to A4, no agreements were reached and no documents were exchanged. (*Id.*) Mr. Lounegov also included as an exhibit to his affidavit the SPA between Finlink and Plaintiffs pertaining to A4. (Stock Purchase Agreement, ECF No. 18, at 33.) In the SPA, the parties acknowledge A4 is "a Tennessee corporation." (*Id.*) Records from the Tennessee Department of State, also included as an exhibit to Mr. Lounegov's affidavit, confirms the same. (Tennessee Dep't of State Records, ECF No. 18, at 42.)[1]

      The Plaintiffs submitted affidavits to rebut Mr. Lounegov's claims. Where a defendant submits affidavits contradicting a plaintiff's assertions, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction, unless the affidavits provided by the defendant are conclusory. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where a plaintiff's complaint and evidence conflict with the defendant's affidavits, the Court must construe all reasonable inferences in favor of the plaintiff. *Id.* In Mr. Lopatine's affidavit, he states that the Defendant communicated with him and the other Plaintiffs in Florida, and that those communications were directed by the Defendant into Florida, with his responses coming from Florida. (Decl. of Alexander Lopatine, ECF No. 22, at ¶ 11.) Mr. Lopatine also claims that, inclusive of his April 2019 meeting or meetings with Mr. Loungenov and Mr. Rottweiler, that he also had meetings with Mr. Lounegov or other representatives of the Defendant in Florida in in August 2018, January 2019, and November 2019. (*Id.* at ¶ 12.) In total, Mr. Lopatine states there were nine business meetings involving him and the Defendant which took place in Florida. (*Id.* at ¶ 11(d).) The Plaintiffs also submitted an affidavit from Jonatan Alava, a member of Hellobuild, LLC, one of the Plaintiffs. Mr. Alava confirms that a business meeting took place in Florida in April 2019. (Decl. of Jonatan Alava, ECF No. 23, at ¶ 6.)

---

[1] The Court notes that in their opposition, the Plaintiffs claim that A4 is "a company based and operated from Miami, Florida." (ECF No. 21, at 2.) Notably, the Plaintiffs affidavits do not aver A4 is incorporated in Florida nor do they state that its principal place of business is in Florida. As the Defendant has introduced exhibits showing the parties agreed in the SPA that A4 is a Tennessee corporation and because Tennessee state records confirm the same, the Court assumes for purposes of its analysis that A4 is a Tennessee corporation.

While the Court could delve into the factual issues raised by the parties in their various affidavits to see if jurisdiction exists under Florida's long-arm statute, the Court finds that exercise would be futile, as exercise of the Court's specific personal jurisdiction in Florida would violate traditional notions of fairness and substantial justice. For a defendant to have the minimum contacts necessary to create specific jurisdiction, the defendant must have a sufficient relationship with the "forum *State*." *Walden*, 571 U.S., at 284 (emphasis added). This relationship must "arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (emphasis in original). As the Supreme Court stated in *Walden*, "[p]ut simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* at 285. The Due Process analysis, therefore, looks at a defendant's contacts "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.*

Having considered the Plaintiffs' complaint and the affidavits submitted by the parties, the Court finds that Finlink simply lacks sufficient contacts with Florida for the Court to exercise its specific personal jurisdiction over the Defendant. As the Defendant stated in its affidavit, the Defendant is neither headquartered in Florida nor is its principal place of business here. The Defendant does not have employees here, has no operations here, and has never sold a product in this state. It appears that the heart of the Defendant's connections with the state are through Mr. Lopatine and the other Plaintiffs, however, exercising jurisdiction over the Defendant on this basis would violate the Due Process Clause of the United States Constitution. Even drawing all inferences in favor of the Plaintiffs, i.e. that business meetings took place in Florida, communications were sent to Mr. Lopatine in Florida, and various agreements between the Defendant and Plaintiffs were violated, the Court finds these allegations do not allow the Court to exercise specific personal jurisdiction over the Defendant. For instance, while the Plaintiffs claim that the Defendant failed to remit certain payments to the Plaintiffs under the LOI or promissory notes, those documents do not appear to require performance in Florida—they simply require payment to the Plaintiffs wherever they may be located—and therefore are insufficient to confer the Court with jurisdiction. *See For Life Products, LLC v. Rust-Oleum Corp.*, 440 F. Supp. 3d 1304, 1367-68 (S.D. Fla. 2020) (Singhal, J.) (noting contract must "*expressly* require performance within the state" to confer jurisdiction).

### 4. Conclusion

The Plaintiffs may well have viable claims against the Defendant, but they may not pursue those claims in this forum. Allowing this matter to proceed in Florida would violate the Defendant's due process rights as the Defendant lacks sufficient connections with the state of Florida. While the Defendant has engaged with the Plaintiffs, who live or have their principal place of business here, those connections are with the Plaintiffs and not with the state of Florida itself. Indeed, if the Mr. Lopatine and the other Plaintiffs were to move tomorrow to another state, this matter would have little to no connection with Florida—this is precisely the type of jurisdictional issue explored by the Supreme Court in *Walden*. Accordingly, the Court **grants** the Defendant's motion to dismiss for lack of personal jurisdiction. (**ECF No. 18**.) This case is dismissed without prejudice. All pending motions, if any, are **denied as moot**, with leave to refile in the proper jurisdiction.

**Done and ordered**, in Miami, Florida, on July 23, 2021.

_____
Robert N. Scola, Jr.
United States District Judge